IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| KELLIE WOOD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:14-cv-01259-JES-JEH |
| | ) |
| PEORIA SCHOOL DISTRICT 150, | ) |
| An Illinois Local Government Entity, | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Kellie Wood ("Wood" or "Plaintiff"), through her attorney, James M. Kelly of the James Kelly Law Firm, states as follows for her Opposition to Defendant's Motion for Summary Judgment:

### RESPONSE TO DEFENDANT'S STATEMENT OF FACTS

1. Plaintiff agrees with the factual statements contained in paragraphs 1 through 15.

2. Plaintiff disagrees with the statement contained in paragraph 16 insofar as it intimates Plaintiff knew the content of the video or the specifics of the rumor. Plaintiff denies that she knew of any allegations of a sexual relationship being portrayed on video, rumored or otherwise. Plaintiff agrees she instructed Ludwig to report the rumors of a video to the administration. (Ex. 1, Pl. Affidavit).

3. Plaintiff agrees with the factual statements contained in paragraphs 17 through 23.

1

4. Plaintiff disagrees with paragraph 24 to the extent that it states that Plaintiff unlocked the door and let the former student, T.R., into the school building. The surveillance videotape of the incident establishes:

    a. Amanda Ludwig, Plaintiff, and T.R. arrived at the school building together. Ludwig used her District-issued ID badge to unlock the school building's secured door. Ludwig held the door open and brought Plaintiff and T.R. into the school building. (Surveillance Video 2/1/13).

5. Plaintiff disagrees with paragraph 25 as Plaintiff asserts that it was a common practice for students and teachers to enter the school through that secured door. (Ex. 1, Pl. Affidavit).

6. Plaintiff agrees that the factual statements contained in paragraphs 26.

7. Plaintiff disagrees with paragraph 27 insofar as it intimates Plaintiff knew of T.R.'s status as being banned from all school property. (Ex. 1, Pl. Affidavit).

8. Plaintiff agrees with the factual statements contained in paragraphs 17 through 33.

9. Plaintiff disagrees with paragraph 34 as the District recommended Plaintiff not contact other employees while on leave, but did not direct her not to contact other employees. (Administrative Leave Letter 2/5/2013).

10. Plaintiff disagrees with paragraph 35 as the District did not instruct Plaintiff to refrain from contacting other employees, it is clear that the District does not do so in every investigation. (Administrative Leave Letter 2/5/2013).

11. Plaintiff disagrees with paragraph 36 to the extent that it intimates Plaintiff contacted another District employee who was a personal friend to influence or interfere with the District's investigations as opposed to discussing unrelated personal matters. (Ex. 1, Pl. Affidavit).

12. Plaintiff agrees with the factual statements contained in paragraphs 37 through 39.

13. Plaintiff disagrees with paragraph 40 insofar as Plaintiff denies a student informed her of the rumor (Ex. 2, Pl. Dep., at 72:12-6).

14. Plaintiff disagrees with paragraph 41 insofar as Plaintiff denies a student informed her of the rumor (Ex. 2, Pl. Dep., at 72:12-6).

15. Plaintiff agrees with paragraph 42 that she and the student who Defendant states informed Plaintiff of the rumor both deny Defendant's allegations. (Ex. 1, Pl. Affidavit).

16. Plaintiff disagrees with paragraph 43 insofar as it is misleading by excluding the prior evaluation which was completed by Zielkowski before March 1, 2013. (Ex. 1, Pl. Affidavit).

17. Plaintiff agrees with paragraphs 44 through 45.

18. Plaintiff disagrees with paragraph 47 as it contends the pretextual reasons which Defendant conceived are "facts" despite evidence to the contrary. Plaintiff denies she had information regarding a videotape depiction a sexual relationship. Plaintiff denies that she was insubordinate and contends that she was not "directed" to adhere from contacting other employees. (Ex. 1, Pl. Affidavit).

19. Plaintiff disagrees with paragraph 48 as Zielkowski admitted to Plaintiff Defendant caused her to change her evaluation for the purposes of developing a pretext to terminate my employment. (Ex. 1, Pl. Affidavit).

20. Plaintiff agrees with paragraphs 49 through 50 in that the evaluation meeting and disciplinary meeting discussed the false, pretextual reasons why the District forged my evaluation.

21. Plaintiff disagrees with paragraph 51 as incomplete to the extent that the letter of reprimand was a revised letter of reprimand (Zielkowski Dep., 17:12-14).

22. Plaintiff disagrees with paragraph 52 as it is an incomplete statement of the revised letter of reprimand. (Letter of Reprimand 3/1/13).

23. Plaintiff disagrees with paragraph 53 as Lathan's accusations are demonstrably false and disputed by Plaintiff. (Ex. 1, Pl. Affidavit).

24. Plaintiff agrees with paragraphs 54 through 55.

25. Plaintiff disagrees with paragraph 56 as Plaintiff had no post-termination grievance process pursuant to the collective bargaining agreement. (Collective Bargaining Agreement).

26. Plaintiff agrees with paragraphs 57 through 69.

27. Plaintiff disagrees with paragraph 70 as the reasons stated are demonstrably false and disputed by Plaintiff. (Ex. 1, Pl. Affidavit).

28. Plaintiff agrees that the factual statements contained in paragraphs 71 through 96 are undisputed.

## ARGUMENT

### I. Statement of Law

Summary judgment will only be granted "if the movant shows that there is no genuine dispute as to *any* material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). On summary judgment, a court should not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (U.S. 1986); *Betaco, Inc. v. Cessna Aircraft Co.*, 32 F.3d 1126, 1138 (7th Cir. 1994); *Sarsha v. Sears, Roebuck & Co.*, 3

F.3d 1035, 1041 (7th Cir. 1993). Rather, "the court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. *Schneiker v. Fortis Insurance Co.*, 200 F.3d 1055, 1057 (7th Cir. 2000); *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999). The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Wollin v. Gondert*, 192 F.3d 616, 621-22 (7th Cir. 1999); *Essex v. United Parcel Service, Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997). The nonmovant must make a showing sufficient to establish any essential element for which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (U.S. 1986); *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999); *Wintz v. Northrop Corp.*, 110 F.3d 508, 512 (7th Cir. 1997).

A procedural due process claim requires a two-fold analysis. First, the court must determine whether the plaintiff was deprived of a property or a liberty interest. *McMahon v. Kindlarski*, 512 F.3d 983, 987 (7th Cir. 2008) citing *Brown v. City of Michigan City, Indiana*, 462 F.3d 720 (7th Cir. 2006). If the plaintiff was deprived of either such interest, then the court must determine what process is due. *Id.*

II.     **Plaintiff has established the essential elements of her liberty interest claim.**

When an employee claims that a government employer has infringed her liberty to pursue the occupation of her choice, the employee must show that (1) she was stigmatized by the defendant's conduct, (2) the stigmatizing information was publically disclosed and (3) she suffered

5

a tangible loss of other employment opportunities as a result of public disclosure. See *Head v. Chicago Sch. Reform Bd. of Trustees*, 225 F.3d 794, 801 (7th Cir. 2000); *Strasburger v. Board of Educ., Hardin County Cmty. Unit Sch. Dist. No. 1*, 143 F.3d at 356; *Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir. 1991).

    A.    **Plaintiff was stigmatized by Defendant's statements.**

When an individual is terminated from a position "for stated reasons likely to make [her] all but unemployable in the future, by marking [her] as one who lost [her] job because of dishonesty or other job-related moral turpitude," due process must be provided. *Covell v. Menkis*, 595 F.3d 673, 677 (7th Cir. Ill. 2010) citing *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1139 (7th Cir. 1984). A government employee's liberty interests are implicated where, in terminating the employee, the government makes any charge against her that might seriously damage her standing and associations in the community or imposes on her a stigma or other disability that forecloses her freedom to take advantage of other employment opportunities. *Covell*, 595 F.3d 673 citing *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (U.S. 1972).

On April 8, 2013, the Board passed a resolution to non-renew Plaintiff's employment at the end of the 2012-2013 school term, which ended on May 30, 2013. Attached to Plaintiff's non-renewal was a list of the Board's allegations against her:

(1) Failure to report to the District and to DCFS that a student had reported to her on January 31, 2013 that another teacher had engaged in sexual contact with a minor student and that there was a video recording of the incident;

(2) Failing to follow a directive from the District administration to refrain from contacting other District employees during her administrative leave while the District was conducting its investigation into allegations of misconduct; and

(3) Failing to follow the school's safety on-door policy on February 1, 2013, by bringing a non-enrolled former minor student into the school building and into her classroom after school hours through a locked back door, breaching the building's security and potentially compromising the safety of students and staff.

Summary judgment is not appropriate in this case because there is a genuine factual dispute concerning the legitimacy of Defendant's statements. There are also genuine factual disputes concerning the nature of Defendant's statements as well as whether they are sufficiently stigmatizing to satisfy the first element of Plaintiff's liberty interest claim. Because the parties dispute these material facts, the Court should not grant summary judgment.

Plaintiff disputes the veracity of Defendant's allegations which formed the pretext for Plaintiff's termination. The truth or falsity of the statement issue is essential to the outcome of Plaintiff's claim. *Strasburger v. Board of Educ.*, 143 F.3d 351, 356 (7th Cir. Ill. 1998) (True but stigmatizing statements that preclude future employment do not support this type of claim.). Although Defendant contends the allegations are true, thus forming the basis of Plaintiff's termination, significant evidence has been submitted to this Court to the contrary. The very heart of the issues, the falsity of Defendant's stigmatizing statements, is a material fact in controversy weighing against summary judgment.

The falsity of Defendant's statement is supported by the state education agency's investigation of Plaintiff. Given the seriousness of Defendant's allegations, the state education agency would reasonably be expected to take action against a teacher if such statements were

true. Despite a lengthy investigation, the state education agency cleared Plaintiff of any wrongdoing. (Ex. 2, Pl. Dep. 24:8-12). Plaintiff did not lose her teaching credentials and remains licensed to teach in Illinois. (Ex. 2, Pl. Dep. 24:8-12).

The nature and stigmatization of Defendant's false statement are disputed issues of materials fact as well. Defendant alleges that its statement concerns only "neglect of duty" and that such a statement cannot be considered stigmatizing. (Def. Brief, p. 18). However, Plaintiff alleges that the accusation clearly implicates Plaintiff in a sexual abuse scandal she had no role in. There is no evidence of any kind to support the District's allegation that Plaintiff knew of a sexual relationship between Amanda Ludwig and a student. Thus, there is a disputed material fact concerning the nature and stigmatization of the statement.

The stigmatization of Defendant's statement is supported by their own employees. Former Manual Academy principal Grenita Lathan described the effect of such accusations as "terrible." (Ex. 3, Lathan Dep., 41:22). Plaintiff's former Peoria School District 150 supervisor Elizabeth Zielkowski characterized the allegations as "unethical." (Ex. 4, Zielkowski Dep., 71:13). Zielkowski stated that future employers would not want to see those type of allegations made against a prospective hire and said they were not the type of statements you would want to make about a professional. (Ex. 4, Zielkowski Dep., 71:22, 72:3).

Defendant's statements were so stigmatizing that they triggered an investigation by the state board of education and a lawsuit by the sexual abuse victim. (Ex. 2, Pl. Dep. 10-11). On June 10, 2013, the state education agency initiated an investigation against Plaintiff based upon the accusations in Defendant's letter of reprimand. (Ex. 5, ISBE Letter 6/10/2013). The state education agency found Defendant's allegations of child abuse so serious that it threatened to take action against Plaintiff's teaching certificate. (Ex. 5, ISBE Letter 6/10/2013). Amanda

Ludwig's victim also initiated a lawsuit against Plaintiff based upon Defendant's statements. (Ex. 2, Pl. Dep. 106:21-24, 107:1).

Viewing the evidence in a light most favorable to Plaintiff, she has demonstrated that there are unresolved disputes of material fact. The parties dispute the veracity of Defendant's statements, as well as their nature and stigmatization. Plaintiff has also presented sufficient evidence for a reasonable fact finder to find that she was stigmatized by Defendant's statement. Surely the agreement by District employees Principal Grenita Lathan and Elizabeth Zielkowski is enough. Both agreed that the allegations against Plaintiff were terrible and they would not hire her. In fact, they fired her. Summary judgment, therefore, is not appropriate.

**B.    Defendant published its stigmatizing statement about Plaintiff.**

The mere presence of information in a personnel file is not publication. *Phillips v. Darien-Woodridge Fire Protection Dist.*, 1995 U.S. Dist. LEXIS 10887 (N.D. Ill. 1995). However, the stigmatizing information is considered published when it has been disseminated beyond the proper chain of command. *McMath v. Gary*, 976 F.2d 1026, 1035 (7th Cir. Ind. 1992) citing *Johnson v. Martin*, 943 F.2d 15, 17 (7th Cir. Ill. 1991). Publication can be proven where it is shown that the stigmatizing information would reach future potential employers or the community at large. *McMath*, 976 F.2d at 1035.

Defendant does not contest that Plaintiff has proven the second element of her liberty interest claim. Defendant's stigmatizing statement was attached to Plaintiff's non-renewal. The statement was subsequently disseminated to reporter Pam Adams of the *Peoria Journal-Star* (Def. Mot. for S.J., S.F. ¶ 73). The *Peoria Journal-Star* published several articles that cited Defendant's allegations against Plaintiff (Ex. 6, PJ Star Articles). Thus, the stigmatizing

9

information reached future potential employers and the community at large. The publication requirement is satisfied.

### C. Plaintiff suffered a tangible loss of employment.

At the heart of every claim that an employer has infringed an employee's liberty of occupation, is a charge that the "circumstances of the discharge, at least if they were publically stated, had the effect of blacklisting the employee from employment in *comparable* jobs." *Colaizzi v. Walker*, 812 F.2d 304, 307 (7th Cir. 1987) (emphasis added). In such cases, the employee's good name, reputation, honor or integrity must be called into question in a manner that makes it *virtually impossible* for the employee to find new employment in *her chosen field*. See *Head v. Chicago Sch. Reform Bd. of Trustees*, 225 F.3d at 801; *Olivieri v. Rodriguez*, 122 F.3d 406, 408 (7th Cir. 1997); *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1348-49 (7th Cir. 1995); *Ratliff v. Milwaukee*, 795 F.2d at 625. For purposes of a name-clearing hearing analysis, an employee's occupation has been interpreted at least as narrowly as that of a high school basketball coach. *Bryant v. Gardner*, 545 F. Supp. 2d 791, 802 (N.D. Ill. 2008).

Summary judgment is not appropriate in this case because there is a genuine dispute of material fact concerning whether Plaintiff suffered a tangible loss of employment. Defendant alleges that Plaintiff did not suffer a loss of employment because she ultimately found a different education-related position. Plaintiff argues that she suffered a tangible loss of employment because she was out of work for nearly a year and has never been able to obtain a comparable job. Thus, there is a genuine dispute of material fact concerning whether Plaintiff suffered a loss of employment.

10

Defendant suggests that Plaintiff was not blacklisted from her occupation because she found work as a temporary summer camp counselor with the Peoria Park District. (Def. Brief, p. 20-21). However, the summer camp counselor position was not at all comparable to her teaching position. As a summer camp counselor, Plaintiff supervised between five and ten pre-kindergarten children for three hours each morning. (Ex. 2, Pl. Dep. 35:10-15). The program included swimming, fishing, and art activities designed to promote social skills among young children. (Ex. 2, Pl. Dep. 35:19-24). It is difficult to contemplate how Plaintiff's position as an experienced middle school mathematics teacher could be comparable to a temporary summer camp job supervising pre-kindergarten children.

Defendant's statements prevented Plaintiff from finding comparable employment with other schools. During an interview with Quest Charter Academy, the principal expressed concern about how the school board would view Plaintiff's character in light of Defendant's accusations. (Ex. 2, Pl. Dep. 52:24, 53:1-2). Plaintiff's name was not taken to Quest's school board for further consideration of employment. (Ex. 2, Pl. Dep. 54:3-9, 21-22). Monroe Elementary School's principal mentioned Defendant's allegations in Plaintiff's interview as well. (Ex. 2, Pl. Dep. 60:11-15). Monroe's principal explained that the school was in a small community and expressed concern over how people would perceive Plaintiff once they learned about the allegations as well. (Ex. 2, Pl. Dep. 60:11-15). Plaintiff's name was not taken to Monroe's school board for further consideration of employment. (Ex. 2, Pl. Dep. 60:18). During an interview with the D.U. Islamic School, the principal explained that the school was a private, religious school and expressed similar concern over how the community would perceive Plaintiff when they learned about Defendant's allegations. (Ex. 2, Pl. Dep. 61:14-18). Plaintiff also failed to obtain

employment with the Sullivan Learning Center because of Defendant's stigmatizing statements. (Ex. 2, Pl. Dep. 64:6-12).

Plaintiff has testified that Defendant's allegations made it humiliating to walk into interviews and be questioned about them. (Ex. 2, Pl. Dep. 113:13-24). Plaintiff could not find employment with a school for over a year. (Ex. 2, Pl. Dep. 8:16-17). Even in her employment at Riverview Grade School, her current job is not comparable to her position at Manual Academy. Plaintiff was a mathematics department chair at Manual Academy and taught seventh and eighth grade classes. (Ex. 7, Pl. Resume) Plaintiff now teaches fourth grade students at Riverview Grade School and has no educational leadership role. (Ex. 2, Pl. Dep. 8:12-13). Plaintiff was a fourth year teacher eligible for tenure at Manual Academy. (Ex. 2, Pl. Dep. 112:4-7, 11-16). Plaintiff testified that she was set back in her new position and lost her progress toward tenure at Riverview Grade School. (Ex. 2, Pl. Dep. 112:4-7, 11-16).

Viewing the evidence in a light most favorable to Plaintiff, she has demonstrated that there is an unresolved dispute concerning the material issue of whether she suffered a tangible loss of employment. She has quantifiable damages for a quantifiable period such that there is no speculation, conjecture, or guesswork. Plaintiff has also presented sufficient evidence for a reasonable fact finder to determine that she suffered a loss of employment. Summary judgment, therefore, is not appropriate.

**D.    Defendant's argument that Plaintiff's claim only alleges reduced salary, thus is insufficient, is disingenuous.**

Defendant claims that Plaintiff's suit only alleges a loss of salary, thus is insufficient to support the deprivation of a liberty interest. However, in so claiming, Defendant not only misrepresents its own statement of facts, it also misrepresents the evidence to the Court.

Defendant self-servingly cites to its own statement of facts in making the allegation that "Plaintiff admits that the ***only*** damage to her professional standing in the field of education is that her current salary is lower than her salary at the District." However, Defendant citation is to its own statement of fact 96 which provides "Plaintiff testified that the damage as to her professional standing in the field of education is that her current salary is lower than her salary at Peoria Public School District No. 150." Nowhere in Defendant's own statement of facts is it contented that the loss of salary is Plaintiff's *only* damage. In fact, a full reading of Plaintiff's deposition demonstrates the damage, both economic and physical, which Plaintiff has suffered. (Ex. 2, Pl. Dep 189:23-24, 190:1-3). Most importantly to this Court's inquiry, is Plaintiff's deposition demonstrates the tangible loss of opportunity Plaintiff has suffered by Defendant's stigmatizing statements.

As Defendant cannot accurately cite its own statement of facts, it is not surprising that Defendant intentionally tries to misrepresent the scope of Plaintiff's loss due to Defendant's publication of the stigmatizing statement. Although Defendant points out Plaintiff has suffered economic loss as a result of Defendant's actions, a fact which Plaintiff agrees with, Plaintiff has suffered a tangible loss of other employment opportunities as demonstrated in this Response.

This Court recognizes that being demoted from a well-paid job to a menial and low-paying one is effectively being excluded from one's occupation. *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1139 (7th Cir. 1984).  That is precisely what happened in this case.  Plaintiff was absolutely barred from her occupation as a teacher due to Defendant's stigmatizing statements.  From the moment which Plaintiff's teaching certificate became threatened by the stigmatizing statement made by Defendant, Plaintiff was unable to pursue her calling secondary to the investigative suspension of her licensure.  Thus, Plaintiff was forced, as Defendant admits, to seek part-time employment in a menial position of summer camp counselor as the only employment she could secure.

In *Lawson v. Sheriff of Tippecanoe County*, the Court was faced with the issue of whether the plaintiff suffered a deprivation of liberty when she was fired, but immediately offered alternative employment by the defendant.  The Court determined that an employer cannot avoid liability by offering an employer a job far beneath the one he had. *Lawson v. Sheriff of Tippecanoe County* at 1139.  The Court stated that such a reduction is a deprivation of a liberty interest, regardless whether the plaintiff has been offered employment because "a person who loses a responsible and well-paid job will usually be able to find a menial and low-paying job with another employer." *Id.*

Thus, had Defendant terminated Plaintiff as happened, but offered her employment as a janitor (given she would no longer hold a teaching certificate if Plaintiff had not refuted Defendant's stigmatizing statement to the Illinois Board of Education), there would be no question that Plaintiff suffered a tangible loss of employment opportunities.  Yet, Defendant attempts to portray to this Court that Plaintiff's extended period of time in which she was absolutely precluded from teaching, is not a tangible loss of opportunity because she obtained a

14

summer camp counselor job and was offered a substitute teaching position. As in *Lawson*, Defendant's argument only supports Plaintiff's claim that she suffered a tangible loss of opportunity evidenced by her taking a position far beneath the one she had. Plaintiff's part-time summer counselor position is not in the same occupational field as Plaintiff's calling. Thus, Defendant's use of this position as a defense is frivolous. Likewise, Plaintiff's opportunity as a substitute teacher is without question a job "far beneath" the one she had given the part-time and haphazard nature of the job.

Moreover, but for Plaintiff being afforded the opportunity with the Illinois Board of Education to clear her name, which is what she has asked Defendant for the opportunity to do, Plaintiff would be absolutely barred from continuing in her occupation by Defendant's stigmatizing statement. The fact that Plaintiff was able to reinstate her teaching certificate, only after taking affirmative action to clear her name with the Illinois Board of Education, is compelling in showing how Defendant's stigmatizing statements caused a tangible loss of Plaintiff's employment opportunities.

**III.   Defendant's argument that Plaintiff was provided due process is without merit.**

Defendant attempts to establish with this Court that Plaintiff's claim must fail because Plaintiff was entitled to a grievance procedure prior to her termination. However, Defendant's argument is without merit as Plaintiff's claim is founded upon a post-termination deprivation of due process.

Defendant misses the point of what due process entails. Defendant, at length, details Plaintiff's pre-termination grievance procedure as a defense to a Plaintiff's right to notice and an opportunity to be heard. Plaintiff raises no issue regarding whether Plaintiff was afforded

adequate due process prior to her termination. Thus, the entirety of Defendant's argument that there was no deprivation of pre-termination due process is lost as this case revolves around Defendant's failure to provide post-termination due process. But it is also axiomatic that due process requires that Plaintiff be given the opportunity to clear her name *after* the discharge under the circumstances which impugned her reputation. "It is now beyond any doubt that discharge from public employment under circumstances that put the employee's reputation, honor, or integrity at stake gives rise to a liberty interest under the Fourteenth Amendment to a procedure opportunity to clear one's name." *Rosenstein v. Dallas*, 876 F.2d 392, 395 (5th Cir. 1989).

Defendant cites *Wallace v. Tilley*, 41 F.3d 296 (7th Cir. 1994) to support its position that Plaintiff's grievance procedure was adequate to satisfy due process. However, *Wallace* actual supports Plaintiff's claim that she was denied due process after her termination. In *Wallace*, the Court dealt with a claim that the plaintiff was denied due process before and after a deprivation. The Court determined that both pre-deprivation and post-deprivation grievance procedures were provided for in the collective bargaining agreement, fully satisfying the requirements of due process. *Id*. at 300. The Court specifically noted "In addition to the adequate process Wallace received prior to and at his termination hearing, he also received adequate post-termination process. Wallace had available a complete set of post-termination procedures through Articles 5 and 6 of the police Collective Bargaining Agreement." *Id.* at 301-301.

Unlike *Wallace*, here there are no post-termination procedures to address Plaintiff's deprivation due to Defendant's stigmatizing statements. While in *Wallace*, the plaintiff was specifically provided a procedure to follow which provided him the required post-deprivation due process, Plaintiff in this case was simply terminated and denied her post-deprivation due

16

process. It was not a matter of Plaintiff failing to seek appropriate redress, in fact, Plaintiff simply sought what she was entitled to, a public name-clearing hearing.

In the absence of post-termination procedures in Plaintiff's collective bargaining agreement, Plaintiff was entitled to the name-clearing hearing after her termination, which Defendant denied. Defendant's spurious investigation into Plaintiff's pre-deprivation due process, and Defendant's allegation of Union malfeasance, simply have no bearing upon the issue at bar. The question for this Court is whether Plaintiff was denied her post-deprivation due process. Given Plaintiff has established that Defendant publicized stigmatizing statements in her termination which caused Plaintiff a tangible loss of employment opportunities, Plaintiff was entitled to a post-deprivation name-clearing hearing. Due process requires an opportunity to publically refute the charge. *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (U.S. 1972). Plaintiff was deprived of her due process when Defendant denied her request to publically clear her name.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests the Court deny Defendant's Motion for Summary Judgment as Plaintiff can prove at trial all elements necessary to show that a name-clearing hearing should have been granted.

Respectfully Submitted,

                */s/ James M. Kelly*
James M. Kelly
Attorney for Plaintiff, KELLIE WOOD

James M. Kelly
JAMES KELLY LAW FIRM
4801 N. Prospect Road
Peoria Heights, IL 61616
P: (309) 679-0900
F: (309) 679-0919

PROOF OF SERVICE

The undersigned certifies that on January 7, 2016 all counsel of record were served with a copy of the foregoing document at their respective addresses by the identified method:

To:  Pamela E. Robinson, Clerk of Court
309 U.S. Courthouse
100 N.E. Monroe St.
Peoria, IL 61602

Babak Bakhtiari
Hodges, Loizzi, Eisenhammer, Rodick & Kohn LLP
3030 Salt Creek Lane, Suite 202
Arlington Heights, IL  60005

|  | |
|---|---|
| _____ | Deposit in the U.S. Mail |
| _____ | Overnight Delivery |
| __X__ | E-File |
| _____ | Hand Delivery |

*/s/ James M. Kelly*
James M. Kelly

James M. Kelly
JAMES KELLY LAW FIRM
4801 N. Prospect Rd.
Peoria Heights, IL  61616
P: (309) 679-0900
F: (309) 679-0919