**E-FILED**
Monday, 08 February, 2016 02:30:15 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| KELLIE WOOD, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 14-1259 |
| | ) | |
| PEORIA SCHOOL DISTRICT 150, | ) | |
| An Illinois Local Government Entity, | ) | |
| Defendants. | ) | |

# ORDER AND OPINION

This matter is now before the Court on Defendant Peoria School District 150's Motion for Summary Judgment [18]. For the reasons set forth below, Defendant's Motion is Granted.

## Background

Plaintiff Kellie Wood ("Wood") was employed by Defendant Peoria School District 150 ("the District") as a probationary (i.e., non-tenured) junior high math teacher at Manual Academy ("Manual") for four years, from 2009 to 2013. Plaintiff's roommate from 2011 to 2013 was Amanda Ludwig, who was an art teacher at Manual. For the 2012-2013 school year, Plaintiff's supervisor was Betty Zilkowski, the Assistant Principal at Manual, Taunya Jenkins was the Principal, and Geri Hammer was the District's Director of Human Resources, and Bryan Devine served as Plaintiff's Union Representative.

During the week of January 28, 2013, Amanda Ludwig engaged in sexual intercourse with a minor student, K.H., in Ludwig's classroom. K.H. made a video recording of the incident on his cell phone and showed the video to other students on January 31, 2013. A Manual student informed Ludwig of a rumor spreading throughout the school of a video showing her and K.H.

engaged in sexual activities. Ludwig reported the rumor to Zilkowski but claimed it was false. Zilkowski relayed the rumor to Principal Jenkins, who in turn informed campus security. Campus security interviewed K.H. and other students and contacted the Peoria Police Department. On February 1, 2013, K.H. admitted that he had a sexual relationship with Ludwig.

During the evening of February 1, 2013, Ludwig and Wood violated the school's security policy when they brought a former Manual student into the school through a locked back door prior to attending a basketball game. Peoria Police officers arrested Ludwig at the basketball game. Shortly after her arrest Ludwig confessed that she had sent K.H. sexually explicit text messages and had sex with him. After Ludwig's arrest and confession, the District interviewed Wood on February 4, and again on February 15, 2013, to determine whether she had any prior knowledge of Ludwig's sexual relationship with K.H. As a teacher, Plaintiff was a "mandated reporter" required to report any allegation of child abuse to the Department of Children and Family Services ("DCFS") if there was reasonable cause to believe abuse had occurred. Wood was placed on paid administrative leave following the February 4 interview while an investigation was conducted.

On March 1, 2013, Zilkowski met with Wood to present her with her final evaluation for the 2012-2013 school year. That evaluation rated Wood as "proficient" overall, but indicated "unsatisfactory" under the subcategory of professionalism. Zilkowski indicated that the unsatisfactory mark was the result of Wood's conduct of bringing a former student into the building after hours in violation of Manual policy, failing to bring information regarding a videotape of Ludwig's sexual activities with a student to the attention of the administration, and contacting District employees while on administrative leave after being directed not to do so.

Zilkowski's evaluation indicated that because of Wood's unprofessional behavior she would not recommend Plaintiff for renewal as a teacher.

Immediately following the evaluation meeting with Zilkowski, Wood and the Union Representative attended a disciplinary hearing where District Superintendent Grenita Lathan issued Wood a letter of reprimand. That letter stated that after a review of the findings from the District's investigation, Lathan had "determined that there is not enough direct evidence to conclude that you had express knowledge of the inappropriate and sexual relationship between Ms. Ludwig and a Manual High School Student." However, the letter went on to state that Wood "engaged in insubordinate and unprofessional conduct" for the same reasons outlined in Zilkowski's evaluation, and that she would not recommend Wood for renewal at the Board meeting on April 8, 2013.

Following the evaluation and disciplinary meetings, Wood spoke with Union Representative Devine about filing a grievance challenging the reprimand and seeking removal of the letter from her personnel file, reversal of the decision to not renew her employment, and modification of the evaluation to remove any reference to her alleged unprofessional conduct. Wood returned to her teaching position on March 11, and the Union filed the grievance on March 19, 2013. On April 4, after numerous discussions between the Union Representative and the District, Devine informed Wood that she could either: (1) do nothing and have the reprimand remain in her file; (2) resign in exchange for the District removing her reprimand but not the evaluation; or (3) resign and sign a resignation agreement in exchange for both the reprimand and professionalism remarks in the evaluation being removed from her file. Wood chose not to resign.

The Union and the District settled the grievance by revising the reprimand letter to remove the term "insubordination." The Union was satisfied with this result and withdrew the grievance. Wood did not request an opportunity to meet with the Board, and she did not proceed to the next step of the grievance process. On April 8, 2013, the Board passed a resolution to not renew Wood's employment at the end of the school year. The attached notice of dismissal stated the same three reasons for the decision to not renew Plaintiff's employment, except the notice of dismissal omitted reference to Wood learning of the abuse from Ludwig directly.[1] On April 10, 2013, a local reporter submitted an Illinois Freedom of Information Act request for a copy of the Board's April 8 resolution, and the District produced the resolution and notice of dismissal on April 17. The Peoria Journal-Star published an article about Wood's dismissal the next day, titled "Second Peoria teacher dismissed in sexting case."

On May 14th, Wood's attorney sent a letter to the District requesting that Wood be reinstated or provided an opportunity to refute the allegations in the notice of dismissal. Wood's employment ended on May 30 and the District denied her attorney's request on July 1, 2013. Wood was able to find a temporary job as a pre-kindergarten camp counselor for Peoria Park District from June through August of 2013. Wood also began looking for full time employment as a teacher; she received eight interviews with approximately six different schools in the area. In July 2014, Wood applied for and was given a teaching position for junior high math at Riverview

---

[1] The Letter of Dismissal stated the following three reasons:
(1) Failure to report to the District and to DCFS that a student had reported to her on January 31, 2013 that another teacher had engaged in sexual contact with a minor student and that there was a video recording of the incident;
(2) Failing to follow a directive from the District administration to refrain from contacting other District employees during her administrative leave while the District was conducting its investigation into the allegations of misconduct; and
(3) Failing to follow the school's safety on-door policy on February 1, 2013, by bringing a non-enrolled former minor student into the school building and into her classroom after school hours through a locked back door, breaching the building's security and potentially compromising the safety of students and staff.

School District where she began full time in August 2014. Wood continues to be employed as a math teacher at Riverview.

**Standard of Review**

A court shall grant summary judgment if the movant shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" *Id*. at 322-23.

Local Rule 7.1(D)(2) requires the party responding to the motion for summary judgment to state in separate subsections: (1) undisputed material facts, (2) disputed material facts, (3) disputed material facts, (4) undisputed immaterial facts, and (5) additional material facts. The Seventh Circuit has "repeatedly upheld the strict enforcement of these rules, sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994).

**Analysis**

As a preliminary matter, the Court notes that Plaintiff's response to Defendant's motion for summary judgment failed to comply with the requirements in the Local Rules for this District by not including in separate subsections which facts are disputed, undisputed, material, or

immaterial. See L.R. 7.1(D)(2). The Local Rules also require that the respondent reference the specific page in the record that supports each claim of disputed fact. L.R. 7.1(D)(2)(b). The statement of facts requirement of Local Rule 7.1 is not a mere formality. Rather, "[i]t follows from the obligation imposed by Fed. R. Civ. P. 56(e) on the party opposing summary judgment to identify specific facts that establish a genuine issue for trial, and it substantially facilitates the district court's task in deciding whether a trial is indeed necessary." *Waldridge*, 24 F.3d at 924. Whether the Court applies "such rule strictly or chooses to overlook any transgression" is a matter left to this Court's discretion. *Id*. at 923. Here, because the undisputed facts provide a sufficient basis to conclude that Plaintiff cannot establish an essential element of her claim, the Court overlooks the defects in Plaintiff's response.

**1. Plaintiff's Liberty Interest**

In order to establish a violation of § 1983, a plaintiff must show that the alleged conduct was committed by a person acting under color of state law, and that the conduct deprived the plaintiff of her rights, privileges, or immunities in violation of the Constitution or laws of the United States. *Strasburger v. Bd. of Educ., Hardin Cty. Cmty. Unit Sch. Dist. No. 1*, 143 F.3d 351, 355-56 (7th Cir. 1998), quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). While the Constitution "guarantees neither liberty of occupation, not liberty of reputation . . . the state infringes on an employee's liberty interests if it discharges an employee while making false charges against him, so damaging the employee that he is precluded as a practical matter from finding other government employment." *Strasburger*, 143 F.3d at 555. In order to prevail on a liberty cause of action, the discharged state employee must show that:

(1) she was stigmatized by the defendant's conduct;
(2) the stigmatizing information was publicly disclosed; and

(3) she suffered a tangible loss of other employment opportunities as a result of the public disclosure.
*Strasburger*, 143 F.3d at 556, quoting *Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir.1991)

In order to establish the first element, the plaintiff must show that a public official made defamatory statements about her, and that those statements were false assertions of fact. *Strasburger*, 143 F.3d at 556 ("True but stigmatizing statements that preclude further government employment do not support this type of claim."); *Ratliff v. City of Milwaukee*, 795 F.2d 612, 625 (7th Cir. 1986). A public statement by a government official is sufficient to meet the first element if "the individual's good name, reputation, honor or integrity are at stake by such charges as immorality, dishonesty, alcoholism, disloyalty, Communism, or subversive acts; or the state imposes a stigma or other disability on the individual which forecloses other opportunities." *Mitchell v. Glover*, 996 F.2d 164, 167 (7th Cir. 1993). In other words, the public statement must "impugn[] the employee's moral character" or imply "dishonesty or other job-related moral turpitude." *Hedrich v. Bd. of Regents of Univ. of Wisconsin Sys*., 274 F.3d 1174, 1183-84 (7th Cir. 2001).

In order for a plaintiff to establish the third element, that she suffered a tangible loss of employment opportunities, the stigmatizing statement must "[not] merely result in reduced economic returns and diminished prestige, but [rather] permanent exclusion from or protracted interruption of employment." *Munson v. Fiske*, 754 F.2d 683, 693 (7th Cir. 1985) ("Liberty is not infringed by a label of incompetence or a failure to meet a specific level of management skills, which would only affect one's professional life and force one down a few notches in the professional hierarchy.") *Id*. The Seventh Circuit has stated that an employee's liberty interest is infringed only if the statement "had the effect of blacklisting the employee from employment in comparable jobs." *Trejo v. Shoben*, 319 F.3d 878, 889 (7th Cir. 2003).

**A) Whether the District's Statement was Stigmatizing**

In their motion for summary judgment, the District argues that the stated reasons for Wood's dismissal do not give rise to a liberty interest claim as a matter of law because the statements were (1) true and (2) not stigmatizing. Viewed in a light most favorable to the non-movant Plaintiff, the Court disagrees.

Although the fact that a statement is true precludes a finding that it is stigmatizing, the District has not presented any evidence to conclude that the first statement in the dismissal notice—"Failure to report to the District and to DCFS that a student had reported to her on January 31, 2013 that another teacher had engaged in sexual contact with a minor student and that there was a video recording of the incident"—was in fact true. There is at least some evidence in the record that Wood was informed of the rumor *from Ludwig* via text message on January 31 or February 1, 2013 (ECF #18-6 at 2). Yet the only evidence the District cites in support of the allegation that *a student* told Wood about the rumor is a single paragraph from the declaration of Human Resources Director Geri Hammer, where she recounts what Wood allegedly told her during the February 15, 2013 interview (ECF #18-1 at 2). Wood denies making that statement. Without explanation, the formal letter of reprimand from Superintendent Grenita Lathan states that "there is not enough direct evidence to conclude that you had express knowledge of the inappropriate and sexual relationship between Ms. Ludwig and a Manual High School Student," but then goes on to reprimand Wood for not reporting the rumor. Although "[t]rue but stigmatizing statements that preclude further government employment" do not support a liberty interest claim, the record is insufficient for the Court to determine that Wood was in fact informed of the rumor by a student. *Strasburger*, 141 F.3d at 356. Thus, a genuine dispute of fact remains with respect to the first element.

Alternatively, the District argues that the failure to report statement in the notice of dismissal was not stigmatizing, as a matter of law, because the statement was merely a charge of neglect of duty. The failure to report statement alleges that Wood neglected her duty as a mandatory reporter, and "[c]harges of incompetence, neglect of duty, malfeasance of office, mismanagement, and failure to meet a specific level of management are all insufficient to implicate a liberty interest." *Snowden v. Adams*, 814 F.Supp 2d 854, 869 (C.D. Ill. 2011); *Munson*, 754 F.2d at 693. But the statement that Wood neglected her duty to report allegations of child abuse can also be reasonably understood as putting her "good name, reputation, honor, or integrity" at stake. *Munson*, 754 F.2d at 693. And in the context of grade school teachers, such a charge is particularly likely to "impugn [her] character" or imply "moral turpitude." *Hedrich*, 274 F.3d at 1183-84. Thus, a genuine factual dispute remains regarding the truthfulness and stigmatizing nature of the statements in Wood's notice of dismissal.

**B) Whether Wood Suffered a Tangible Loss of Employment Opportunities**

The second element of the liberty interest analysis requires that the alleged defamatory statement be published. Because both parties agree that the notice of dismissal was produced to a journalist pursuant to a FOIA request, and later published in the Peoria Journal-Star, the viability of Wood's liberty interest claim hinges on the third element—whether she suffered a tangible loss of employment opportunities as a result of the public disclosure.

In order to establish a tangible loss of employment opportunities under the liberty interest cause of action, the plaintiff must show that the publicly stated reasons for the discharge "had the effect of blacklisting the employee from employment in comparable jobs," *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001), making it "virtually impossible for the individual to find new employment in his chosen field." *Emery v. N.E. Ill. Reg'l Commuter R.R. Corp.*, 2003 WL

22176077 at *3 (N.D. Ill. 2003), quoting *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 617 (7th Cir. 2002). “Serious impairment of one’s future employment is not even enough.” *Emery*, 2003 WL 22176077 at *3 (finding that plaintiff failed to state a claim for violation of her liberty interest because she found comparable employment within 16 months of her termination).

Wood’s employment with the District ended on May 30, 2013. Thereafter she worked part-time as a summer camp counselor from June through August of 2013, and was ultimately hired as a middle school math teacher by the Riverview School District in the summer of 2014. Thus, Wood’s year-long hiatus from teaching did not amount to a tangible loss of employment sufficient to support her liberty interest claim. She was not “blacklisted” from the profession, and the fact that she was hired as a middle school math teacher at Riverview the next school year indicates that it was not “virtually impossible” to find another teaching position. See *Townsend*, 256 F.3d at 670; *Emery*, 2003 WL 22176077 at *3. To the contrary, Wood secured a new teaching position after about eight interviews, and she considered five interviews to be “barely any looking” for a teaching position. And while her temporary employment as a camp counselor may not have been a comparable job, it did show that the District’s statements in the notice of dismissal did not tarnish her reputation or trustworthiness, at least not as significantly as she claims. The analysis would be different if Wood’s dismissal also resulted in the loss of her teaching certificate, since such action would have precluded her from teaching entirely.

Plaintiff’s assertion that she was blacklisted from obtaining a comparable job because she was paid less and taught different grades at a different school is likewise unconvincing. Wood found new employment for an almost identical position as a middle school math teacher. See *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 575 (1972) (“It stretches the concept too far to suggest that a person is deprived of liberty when he simply is not rehired in one job but

remains as free as before to seek another.”); *Mitchell v. Glover*, 996 F.2d 164, 167 (7th Cir. 1993) (“Liberty is not infringed by a label of incompetence or a failure to meet a specific level of management skills, which would only affect one's professional life and force one down a few notches in the professional hierarchy.”); *Munson v. Friske*, 754 F.2d 683, 693 (7th Cir. 1985) (“A liberty interest is not implicated where the charges merely result in reduced economic returns and diminished prestige, but not permanent exclusion from or protracted interruption of employment.”). A liberty interest in pursuing a career in the field of one’s choosing does not vest Wood with a right to have the same job, or the same salary, or the same employer. *Id*. Because Wood cannot establish the third element of a liberty interest cause of action, that she suffered a tangible loss of employment opportunities, a grant of summary judgment in favor of the District is appropriate.

**2) Due Process**

Finally, even if Wood was able to establish a liberty interest violation, she would still need to show that she was deprived of that interest without due process. In the liberty interest context, due process requires some form of a hearing and adequate notice of that hearing. *Wallace v. Tilley*, 41 F.3d 296, 300 (7th Cir. 1994). “Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.” *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). The Seventh Circuit has recognized that grievance procedures under a collective bargaining agreement can satisfy due process even when the public employee has been discharged. *Buttitta v. City of Chicago*, 9 F.3d 1198, 1206 (7th Cir. 1993). Where an employee merely declines or fails to take advantage of an administrative procedure that the state employer has made available

to him, the state cannot be held to have violated due process requirements. *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982).

Here, Wood had notice of the allegations against her when she was placed on administrative leave in early February. She was also given notice and an explanation of the charges against her during the March 1, 2013, evaluation and disciplinary meeting. The Union's collective bargaining agreement with the District provided Wood with grievance procedures to contest those charges. With the help of the Union Representative, Wood filed a grievance challenging the statements in the reprimand letter and the decision to not recommend her for renewal. Before the April 8, 2013 Board meeting, the Union Representative negotiated with the District and presented Wood with options to remove the reprimand and negative evaluation, but she choose to do nothing. If Wood was unsatisfied with the Union's attempt at resolving the issue, she could have availed herself of the grievance procedures, including binding arbitration. After the Board passed a resolution to not renew Wood, her attorney sent a letter to the District on May 14 requesting that Wood be either reinstated or given a name clearing hearing. The District denied her requests on July 1, 2013.

Wood argues that although she "raises no issue regarding whether [she] was afforded adequate due process prior to her termination," the District was also required to provide post-termination procedures. Plaintiff's understanding of due process is flawed. "Due process is flexible and calls for such procedural protections as the particular situation demands." *Perry v. F.B.I.*, 781 F.2d 1294, 1303 (7th Cir. 1983). In some cases, such as termination of welfare benefits, due process requires that the government afford procedures to recipient prior to the termination of such benefits. See *Goldberg v. Kelly*, 397 U.S. 254, 266 (1970). In other circumstances, such as a police department refusing to return an officer to active duty, post-

deprivation procedures alone may satisfy due process. See *Buttitta v. City of Chicago*, 9 F.3d 1198, 1206 (7th Cir. 1993).

Wood argues that even though she was afforded due process prior to her termination, the District was also required to provide her that same process—a name clearing hearing—after she was terminated. Yet Wood was provided the opportunity to clear her name through the grievance procedures under the collective bargaining agreement. The fact that Wood did not fully avail herself of those procedures to clear her name before the Board's decision to not renew her employment does not entitle her to a second bite at the apple after the Board passed the resolution. See *Perry v. F.B.I.*, 781 F.2d 1294, 1303 (7th Cir. 1986) ("Perry's vague request on appeal and at rehearing for a hearing to "clear his name" has in essence been satisfied as Perry had numerous opportunities, short of a full hearing, which he took advantage of to protect his interests.").

**CONCLUSION**

For the reasons stated above, Defendant's Motion [18] for summary judgment is Granted. This matter is now terminated.

Signed on this 8th day of February, 2016.

s/ James E. Shadid
James E. Shadid
United States District Judge